UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

Ra Maat Ptah Atum, *akau* James Jordan, III, # 231341,    ) CA No. 4:05-3360-CMC-TER
                                                          )
                              Plaintiff,                   )
                                                          )
vs.                                                       )
                                                          )
Anthony Padula, Warden;                                   )
Jon Ozmint, SCDC Director;                                )        Report and Recommendation
State of South Carolina;                                  )
SCDC;                                                     )
United States;                                            )
United Nations;                                           )
Florence County;                                          )
Mark Sanford, Governor of South Carolina;                 )
Samuel B. Glover, Director, Dep't of PPPS;                )
Gwendolyn A. Bright, Director, Parole Board Support Services; )
South Carolina Dep't of PPPS;                             )
Marc H. Westbrook, trial judge;                           )
Juliue Lee, investigator;                                 )
NFN Holler, police officer;                               )
NFN Kyser, police officer;                                )
Charles Condon, former S.C. Attorney General;             )
William Bryan Dukes, former A. A.G.;                      )
Paul M. Burch, trial judge;                               )
Robert Wells Lowman, PCR attorney;                        )
Louis Farrakah;                                           )
Bill Clinton, former President;                           )
Michael Moore, former SCDC Director;                      )
David Beasley, former SC Governor;                        )
Sgt. NFN Parnell, Librarian at Lee;                       )
Lt. NFN Davis, Lee CI;                                    )
Rickie Harrison, Warden at Kershaw;                       )
Tom Smith, Assistant Warden at Turbeville;                )
C/O NFN Thomas, Lee CI;                                   )
Sgt. NFN Lloyd, Lee CI;                                   )
IGC NFN Mitchell, Lee CI;                                 )
Sgt. NFN Rhodes, Lee CI;                                  )
Sgt. NFN Green, Lee CI;                                   )
All Congress, Judicial and Executive members of the United )
States in the Masonic Order since 1996-2005;              )
All United Nations members in the Masonic Order since 1996-2005; )
C/O NFN Sturkie, Lee CI;                                  )
C/O NFN Gathers, Lee CI;                                  )
C/O NFN Austin, Lee CI;                                   )
Masonic Order;                                            )
Dudley Saleeby, Jr.;                                      )
W. Harry Conner, Jr.;                                     )
John C. Jepertinger, and                                  )
United State Magistrate Judge Joseph R. McCrorey,         )
                                                          )
                              Defendants.                  )
_____ )

## Introduction

This is a civil action filed *pro se* by a state prison inmate.[1]   Plaintiff is currently incarcerated at Kershaw Correctional Institution, part of the South Carolina Department of Corrections (SCDC) prison system.  He is serving a twenty-year sentence on a second-degree criminal sexual conduct conviction entered in Florence County in 1996.

Plaintiff has filed several cases in this Court previously, most of which have been addressed on the merits.  *See* Civil Action Nos. 4:04-23332 (summarily dismissed on immunity grounds; claiming conspiracy among USA, President, Vice President, and judges; 3:04-22840 (summarily dismissed for failure to get case into proper form as directed by submitting documents signed in legal name; conditions of confinement at Evans CI); 2:00-671 (summarily dismissed on immunity, <u>Heck v. Humphrey</u> and lack of state action; malpractice and conspiracy claims relating to Florence County PCR case ); 9:00-669 (summary judgment for defendants; SCDC's refusal to recognize non-legal name not a constitutional violation).  Although each of these civil actions were ultimately unsuccessful, Plaintiff did not appeal any of the results to the Fourth Circuit Court of Appeals.  Plaintiff also has a currently pending habeas corpus action in this Court.  *See* Civil Action No. 3:05-3361-CMC-JRM.

In the present case, in rambling, argumentative, and often repetitive allegations, Plaintiff attempts to re-visit his prior cases in this Court, as well as the various stages of court proceedings in Florence County relative to his criminal conviction.  He also seeks to

---

[1] Pursuant to 28 U.S.C. §636(b)(1), and Local Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in such *pro se* cases and to submit findings and recommendations to the District Court.  *See also* 28 U.S.C. § § 1915(e); 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

raise numerous claims of constitutional violations arising from the conditions of his confinement. Plaintiff names thirty-seven (37) persons and entities as Defendants, and, essentially, claims that previous and current members of the State of South Carolina's judiciary, previously and currently elected and appointed state and federal officials, previous and current officials and employees of SCDC, several private attorneys, the fraternal group known as the Masonic Order, unnamed members of Congress and the United Nations, and the leader of the Nation of Islam, Louis "Farrakah"[2] have all conspired together to wrongfully and unjustly imprison Plaintiff, to keep him incarcerated, and to harass and torture him during his incarceration. He broadly claims that the courts, law enforcement and legislative officials, and SCDC and its employees and officials have all been conspiring since 1996 to create a "paper chase" so that his prior cases in this Court and in other courts have been unsuccessful, and that SCDC officials have intentionally placed troublemakers, including unnamed Masons and members of the Nation of Islam, in his cells with him to somehow make him unable to properly pursue the claims he has tried to raise. He claims that he is entitled to injunctive and declaratory relief and compensatory and punitive damages under "28 U.S.C. § 2401, 42 U.S.C.A. § 1981, § 1983 and § 1985" and also cites to 18 U.S.C. § § 1961, 1962, 242 as alleged additional bases for his claims that some or all of the Defendants should be held "criminally liable."[3]

---

[2]The proper spelling of this individual's name is Farrakhan. *See* http://www.noi.org/mlfbio.htm (Biographical information on Minister Louis Farrakhan; Nation of Islam official internet website).

[3]These sections of Title 18 of the United States Code are all criminal statutes, and, despite Plaintiff's allegations otherwise, he is not able to have criminal charges brought against any Defendant through this civil action. *See* Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)(an individual has no judicially cognizable interest in the criminal prosecution of another); *see also* Diamond v. Charles, 476 U.S. 54, 64-65 (1986)(*applying* Linda R.S. v. Richard D. and collecting cases); Doyle v. Oklahoma State Bar Ass'n, 998 F.2d

(continued...)

## Pro Se Review

Under established local procedure in this judicial district, a careful review has been made of Plaintiff's *pro se* Complaint filed in this case. This review has been conducted pursuant to the procedural provisions of 28 U.S.C. § § 1915, 1915A, and the Prison Litigation Reform Act of 1996, and in light of the following precedents: <u>Denton v. Hernandez</u>, 504 U.S. 25 (1992); <u>Neitzke v. Williams</u>, 490 U.S. 319, 324-25 (1989); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); <u>Nasim v. Warden, Maryland House of Correction</u>, 64 F.3d 951 (4th Cir. 1995)(*en banc*); <u>Todd v. Baskerville</u>, 712 F.2d 70 (4th Cir. 1983); and <u>Boyce v. Alizaduh</u>, 595 F.2d 948 (4th Cir. 1979).

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys, *see* <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *See* <u>Hughes v. Rowe</u>, 449 U.S. 5, 9-10 & n.7 (1980); <u>Cruz v. Beto</u>, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. *See* <u>Fine v. City of New York</u>, 529 F.2d 70, 74 (2d Cir. 1975). Nevertheless, the requirement of liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts

---

[3](...continued)

1559, 1566-67 (10th Cir. 1993); <u>Lane v. Correll</u>, 434 F.2d 598, 600 (5th Cir. 1970). Although 18 U.S.C. § 1964 does provide for a civil action for RICO violations under certain, specific circumstances, Plaintiff does not cite to this section as a basis for his damage claims. However, even if he had included such a citation, his allegations in the Complaint are clearly inadequate to state a viable civil RICO claim against any person or entity because there are no allegations that any Defendant's activities "injured [Plaintiff] in his business or property." Rather, Plaintiff's claims are all directed to alleged injuries to Plaintiff's person, such as mental distress, through the placing of restrictions on Plaintiff's liberty. There are no allegations in Plaintiff's Complaint to the effect that he has any type of "business" or "property" that was injured by any Defendant's actions. Clearly, despite his citation to the RICO criminal statutes, Plaintiff's Complaint fails to state a viable civil RICO action against anyone.

4

which set forth a claim currently cognizable in a federal district court. *See* Weller v. Department of Social Servs., 901 F.2d 387(4th Cir. 1990). Even under this less stringent standard, however, the Complaint filed in this case is subject to summary dismissal under the provisions of 28 U.S.C. § 1915(e)(2)(B).

## Discussion

**1**. **Heck v. Humphrey**

Initially, to the extent that Plaintiff's Complaint alleges constitutional improprieties (including "conspiracies") by any of the Defendants in connection with his Florence County arrest, prosecution, trial, and/or post-trial judicial proceedings, as Plaintiff has previously been informed,[4] his claims are barred by the United States Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994). As Plaintiff has been informed, with respect to actions filed pursuant to 42 U.S.C. §§ 1981, 1983, and/or 1985 such as the present one alleging constitutional violations and/or conspiracies in connection with state criminal charges,[5] the United States Supreme Court has written:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm whose unlawfulness would render a conviction or sentence invalid, . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C.

---

[4] See Civil Action Nos. 4:04-23332 (Heck v. Humphrey was one basis for the recommendation of summary dismissal); 2:00-671(same).

[5] See Amaker v. Weiner,179 F.3d 48, 51-52 (2d Cir. 1999)(Heck bar applies to actions under §§ 1981, 1983, 1985, 1986, where plaintiff alleged a conspiracy to frame him for the crime of which he was convicted); *see also* Browdy v. Karpe, 131 Fed.Appx. 751 (2d Cir., May 16, 2005) (Not selected for publication in the Federal Reporter, NO. 04-5559-PR)(Heck bar applies to actions under §§ 1983, 1985, 1986); Lawson v. Engleman, 67 Fed.Appx. 524, 525-26, 526 n. 2 (10th Cir.2003) (unpublished opinion).

§ 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Heck v. Humphrey, 512 U.S. at 486-87; *see also* Ballenger v. Owens, 352 F.3d 842 (4th Cir. 2003)(Heck generally applies where search and seizure issues are raised); Woods v. Candela, 47 F.3d 545 (2d Cir.1995)(plaintiff's conviction reversed by state court in 1993; hence, civil rights action timely filed); Treece v. Village of Naperville, 903 F. Supp. 1251 (N.D. Ill. 1995); Seaton v. Kato, 1995 WL 88956 (N.D. Ill., February 28, 1995); Smith v. Holtz, 879 F. Supp. 435 (M.D. Pa. 1995). Heck also applies to bar constitutional claims arising from parole proceedings, such as those Plaintiff attempts to raise in this case against Defendants Bright and Glover. *See* McGrew v. Texas Bd. of Pardons & Paroles, 47 F.3d 158, 161 (5th Cir. 1995)(action challenging validity of parole proceedings calls into question fact of confinement and thus is subject to Heck); *accord* Husketh v. Sills, 34 Fed.Appx. 104, 105 (4th Cir., May 08, 2002) (unpublished opinion, text in WESTLAW, No. 02-6261); Gibbs v. South Carolina Dept. of Probation, Parole, and Pardon Services, 168 F.3d 481, 481 (4th Cir., Jan 12, 1999) (unpublished, text in WESTLAW, No. 97-7741).

By the above-quoted statement, the United States Supreme Court ruled that until a criminal conviction is set aside by way of appeal, PCR, habeas, or otherwise, any civil rights action based on the conviction and related matters will be barred. Even so, the limitations period for such a civil rights action will not begin to run until the cause of action accrues; therefore, a potential section 1983 plaintiff does not have to worry about the

running of the statute of limitations while he or she is taking appropriate steps to have a conviction overturned. *See* Benson v. New Jersey State Parole Board, 947 F. Supp. 827, 830 & n. 3 (D. N.J. 1996)(following Heck v. Humphrey and applying it to probation and parole revocations "[b]ecause a prisoner's § 1983 cause of action will not have arisen, there need be no concern that it might be barred by the relevant statute of limitations."); Snyder v. City of Alexandria, 870 F. Supp. 672, 685-88 (E.D. Va. 1994). Since it is obvious that Plaintiff has not been successful in his attempts to have his criminal sexual conduct conviction set aside because he remains incarcerated and because his allegations of unconstitutional, discriminatory activities in connection with his prosecution and conviction would, if true, invalidate his conviction, Plaintiff cannot sue any of the Defendants at this time because of their involvement or alleged involvement in his arrest, prosecution, conviction, and/or continuing confinement on that conviction. *See* Johnson v. Freeburn, 29 Fed. Supp.2d 764, 772 (S.D. Mich. 1998)(under Heck v. Humphrey, nature of relief sought is not critical question; rather, it is the grounds for relief); *see also* Clemente v. Allen, 120 F.3d 703 (7th Cir. 1997)(injunctive relief sought). As a result, this case is subject to summary dismissal as to Defendants Anthony Padula; State of South Carolina; SCDC; South Carolina Department of Probation, Parole and Pardon Services; Gwendolyn A. Bright; Samuel E. Glover; United States; United Nations; Florence County; Mark Sanford, Governor of South Carolina; Marc H. Westbrook, trial judge; Juliue Lee, investigator; NFN Holler, police officer; NFN Kyser, police officer; Charles Condon, former S.C. Attorney General; William Bryan Dukes, former A. A.G.; Paul M. Burch, trial judge; Robert Wells Lowman, PCR attorney; Bill Clinton, former President; David Beasley, former SC Governor; Dudley Saleeby, Jr.; W. Harry Conner, Jr.; and John C. Jepertinger without

7

issuance of service of process under the rule established by Heck v. Humphrey.

## 2. Judicial immunity; color of state law

Plaintiff has also previously been informed that he cannot sue judges  based on their performance of judicial functions.[6]  *See*  Mireles v. Waco, 502 U.S. 9 (1991); Stump v. Sparkman, 435 U.S. 349, 351-64 (1978); Pressly v. Gregory, 831 F.2d 514, 517 (4th Cir. 1987)(a suit by South Carolina inmate against two Virginia magistrates); Chu v. Griffith, 771 F.2d 79, 81 (4th Cir. 1985)("It has long been settled that a judge is absolutely immune from a claim for damages arising out of his judicial actions.");  *see also* Siegert v. Gilley, 500 U.S. 226 (1991)(immunity presents a threshold question which should be  resolved before discovery is even allowed); Burns v. Reed, 500 U.S. 478 (1991)(safeguards built into the judicial system tend to reduce the need for private damages actions as a means of  controlling  unconstitutional  conduct);  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)(absolute immunity "is an immunity from suit rather than a mere defense to liability"). He has also previously been made aware that he cannot state viable civil rights claims against his court-appointed or retained legal counsel because they were not acting under the color of state law when they were representing him.[7]  In order to state a cause of action under § 1983, a plaintiff must allege that: *(1)* the defendant(s) deprived him or her of a federal right, and *(2)* did so under color of state law.  *See* Gomez v. Toledo, 446 U.S. 635, 640 (1980).  The United States Supreme Court has determined that "a public defender does not qualify as a state actor when engaged in his general representation of a criminal

---

[6]See Civil Action Nos. 4:04-23332 (judicial immunity was one basis for the recommendation of summary dismissal); 2:00-671(same).

[7]*See* Civil Action No. 2:00-671 (plaintiff's suit against his court-appointed attorneys dismissed for lack of color of state law).

defendant." <u>Georgia v. McCollum</u>, 505 U.S. 42, 53 (1992).[8]  The Court held in <u>Polk County</u>

<u>v. Dodson</u>, 454 U.S. 312 (1981), that the adversarial relationship of a public defender with

the State prevented the attorney's public employment from alone being sufficient to support

a finding of state action.   This same lack of activities undertaken under color of state law

also bars Plaintiff's claims that certain questionably described prison-based activities of the

private fraternal organization, the Masonic Order, and Defendant Farrakah, a private

minister/cultural leader, discriminate against him and otherwise violate his constitutional

rights.  Accordingly, the Complaint is subject to summary dismissal as to Defendants Marc

H. Westbrook, Paul M. Burch, and Joseph R. McCrorey under the doctrine of judicial

immunity; as to Defendants John C. Jepertinger and Robert Wells Lowman due to the

absence of state action in their legal representation of Plaintiff; and as to Defendants the

Masonic Order and Louis Farrakah due to fact that their prison-based activities of which

Plaintiff complains are not taken under color of state law.

## 3. <u>Legislative, executive, prosecutorial immunity</u>

To the extent that Plaintiff's alleges a conspiracy by unnamed members of Congress

and the South Carolina General Assembly to improperly confine him by failing to pass laws

in his favor and/or failing to take legislative steps to free him from prison, the Complaint is

subject to summary dismissal under the doctrine of legislative immunity.  Members of

Congress and of the General Assembly of the State of South Carolina have immunity from

civil rights suits relating to legislative actions taken or not taken.  *See* <u>Tenney v.</u>

---

[8] In <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 929 (1982), the Court held that the statutory requirement of action "under color of state law" is identical to the "state action" requirement for other constitutional claims.

Brandhove, 341 U.S. 367 (1951); Haskell v. Washington Township, 864 F.2d 1266, 1277 (6th Cir. 1988)("legislators of any political subdivision of a state are absolutely immune from liability under 42 U.S.C. § 1983 insofar as they are acting in a legislative capacity"); see also Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 403 (1979)(legislative immunity extends to "regional" legislatures); Rabkin v. Dean, 856 F. Supp. 543, 546 (N.D. Cal. 1994).  Furthermore, a federal district court may not ask present or former members of legislative bodies why they passed or did not pass a particular statute, or why they authorized funds for one purpose and did not authorize funds for another purpose.  See South Carolina Education Ass'n v. Campbell, 883 F.2d 1251 (4th Cir. 1989). Cf. Doherty v. City of Chicago, 1994 WL 319239, at *6 (N.D. Ill., June 23, 1994)("Absolute immunity shields a legislator's conduct even when that conduct is based on improper motives."); Sea Cabin on Ocean IV Homeowners Ass'n v. City of North Myrtle Beach, 828 F. Supp. 1241, 1242 n. 1 (D.S.C. 1993).  Delegates and representatives to the United Nations are also entitled to immunity, including "immunity from legal process." Tachiona v. U.S., 386 F.3d 205, 218 (2d Cir. 2004), petition for cert. filed, 74 U.S.L.W. 3425 ( U.S. Jan 12, 2006)(NO. 05-879).

Similarly, members of the executive branch, such as Governor Sanford, former Governor Beasley,  SCDC Director Jon Ozmint,  former SCDC Director Michael Moore, and Samuel B. Glover, Director of the South Carolina Department of Probation, Parole and Pardon Services, are immune from lawsuits such as this which attempt to impose liability on them for actions taken within the course and scope of his/her official executive duties. See McCall v. Batson, 285 S.C. 243, 329 S.E.2d 741, 743 (1985)(Opinion abolishing

10

sovereign immunity in tort "does not abolish the immunity which applies to all legislative, judicial and executive bodies and to public officials who are vested with discretionary authority, for actions taken in their official capacities.").

Also, current and former prosecutors are also entitled to immunity from lawsuits arising from their performance of their prosecutorial duties.  In South Carolina, regional prosecutors are called Solicitors and Assistant Solicitors.  *See* S.C. Const., art. V, § 24; S.C. Code Ann., § 1-7-310.  Solicitors are elected by voters of a judicial circuit and have absolute immunity for activities in or connected with judicial proceedings, such as a criminal trial, bond hearings, grand jury proceedings, pre-trial "motions" hearings, and ancillary civil proceedings.  *See* Buckley v. Fitzsimmons, 509 U.S. 259 (1993); Burns v. Reed, 500 U.S. 478 (1991); Hart v. Jefferson County, 1995 WL 399619 (D.Ore., June 15, 1995)(allegations by plaintiff of malicious motives on part of two prosecutors insufficient to overcome prosecutorial immunity). As a result, Plaintiff's Complaint is subject to summary dismissal as to Defendants Sanford; Beasley; Clinton; Glover; Ozmint: Moore; All Congress, Judicial and Executive members of the United States in the Masonic Order since 1996-2005; All United Nations members in the Masonic Order since 1996-2005; Dudley Saleeby, Jr.; and W. Harry Conner, Jr. under the doctrines of executive, legislative, and prosecutorial immunity.

## 4. Grievance breakdown; library access; collateral estoppel

The Complaint in this case also fails to state a civil rights claim against any of the South Carolina Department of Corrections employees or officials named as Defendants based on Plaintiff's contentions that his constitutional rights have been violated by the

alleged breakdown of the inmate grievance system at the various SCDC institutions where Plaintiff has been housed: Turbeville, Evans, Manning, Lee, Kershaw Correctional Institutions.  It is well settled that prison inmates have no federal constitutional right to have *any* inmate grievance system in operation at the place where they are incarcerated.  *See*, *e.g.*, Adams v. Rice,  40 F.3d 72, 75 (4th Cir. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Mann v. Adams, 855 F.2d  639, 640 (9th Cir.1988); Brown v. Dodson, 863 F.Supp. 284, 285 (W.D. Va. 1994).  Furthermore, simply because a state or local authority chooses to establish an inmate grievance system, that choice does not confer any substantive constitutional right on the prison inmates or pre-trial detainees. *See* Mann.  As a result, even if corrections officials  fail to properly apply an inmate grievance procedure, as Plaintiff contends is and was the case in every SCDC institution where he has been housed, such failure is not actionable under § 1983 or any other civil rights statute.  *See* Spencer v. Moore, 638 F.Supp. 315, 316 (E.D. Mo.1986); Azeez v. DeRobertis, 568 F.Supp. 8, 9-11  (N.D. Ill. 1982).  Plaintiff's claims about persons such as Defendants Mitchell, Parnell, Padula, Harrison, and Smith giving him the "paper chase" by requiring him to use his legal name, by refusing to accept incorrectly completed grievance forms, and by refusing to allow him unrestricted access to a law library fail to state any viable claim because it is settled that it is the responsibility of the prisoner to fully comply with the terms of any applicable prison administrative remedy policy regarding time limits and procedural matters, thus the officials' demands that Plaintiff so comply did not violate his constitutional rights.  *See* Johnson v. Johnson, 385 F. 3d 503, (5th Cir.  2004); Strong v. David, 297 F.3d 646, 649 (7th Cir. 2002).  Also, Plaintiff is barred by the doctrine of collateral estoppel from

now attempting to re-litigate against any Defendant his claims about institutional requirements that he use his legal name and restrictions on his ability to use the institutional law libraries whenever he wants to. This Court has previously addressed the merits and rejected such claims in a case in which Plaintiff fully participated. *See* Civil Action No. 9:00-669-CMC. Collateral estoppel is applicable in civil rights cases and applies to bar re-litigation of issues that were decided in a previous action. *See* Allen v. McCurry, 449 U.S. 90, 102-03 (1980); Thurston v. United States, 810 F.2d 438, 444-45 (4th Cir. 1987); Williams v. Bennett, 689 F.2d 1370, 1381-82 (11th Cir. 1982).

Collateral estoppel applies if it is established that:

(1)   the issue sought to be precluded is identical to one previously litigated;
(2)   the issue [was] actually determined in the prior proceeding;
(3)   determination of the issue [was] a critical and necessary part of the decision in the prior proceeding;
(4)   the prior judgment [is] be final and valid; and
(5)   the party against whom estoppel is asserted . . . had a full and fair opportunity to litigate the issue in the previous forum.

Sedlack v. Braswell Servs. Group, Inc., 134 F.3d 219, 224 (4th Cir. 1998).

In Civil Action No. 9:00-669-CMC, Plaintiff fully participated in the case and this Court determined that SCDC officials did not violate Plaintiff's constitutional rights by requiring him to use his legal name and by placing restrictions on his use of prison law libraries. Thus, Plaintiff's continuing assertions that Defendants Mitchell, Parnell, Padula, Harrison, and Smith violated his constitutional rights are barred and the Complaint should be summarily dismissed as to these Defendants.

5. **Custody classification and cell assignments**

Insofar as Plaintiff's Complaint seeks to impose liability on any SCDC official or employee (such as Defendants Moore, Padula, Rhodes, Green, Ozmint, Harrison, Davis, and Smith) because of their involvement in Plaintiff's custody classifications and cell assignments, it is subject to summary dismissal. Plaintiff does not have a constitutional claim relating to his classification for custody purposes. Prior to 1993, South Carolina law provided that the now-superannuated State Board of Corrections was to govern the actions of the Department of Corrections. *See* S.C. Code Ann. § 24-1-40. At that time, the Code of Laws of the State of South Carolina vested exclusive authority relating to prisoners on the State Board of Corrections and the Commissioner of the SCDC, and placed no limitations on official discretion. *See* S.C. Code Ann. §§ 24-1-130, 24-1-140, 24-3-20, 24-3-30. Although the so-called South Carolina "Restructuring" Act of 1993, 1993 S.C. Acts 193, effective July 1, 1993, abolished the State Board of Corrections, it did not abolish the duties of the Commissioner, who is now called the "Director[.]" *See* S.C. Code § 24-1-40.

Federal courts are required to accord great consideration to a correctional system's need to maintain order, discipline, and control. *See* Wolff v. McDonnell, 418 U.S. at 558-562. There is no constitutional right for a state prisoner or federal prisoner to be housed in a particular institution, at particular custody level, or in a particular portion or unit of a correctional institution. *See* Olim v. Wakinekona, 461 U.S. 238 (1983); Ange v. Paderick, 521 F.2d 1066 (4th Cir. 1975); Lyons v. Clark, 694 F. Supp. 184, 187 (E.D. Va. 1988)(collecting cases). In other words, the placement and assignment of inmates into

14

particular institutions or units by state or federal corrections departments are discretionary functions, and are not subject to review *unless* state or federal law places limitations on official discretion.  *See* Hayes v. Thompson, 726 F.2d 1015, 1016-1017 & n.1 (4th Cir. 1984)(collecting cases).

It is known from other cases previously decided in this judicial district that South Carolina law confers no protected liberty interest upon inmates of the South Carolina Department of Corrections from being classified, or being placed in administrative segregation, in a particular prison, or in a particular section of a prison.  *See*, *e.g.*, the order of the Honorable Henry M. Herlong, Jr., United States District Judge, in Keeler v. Pea, 782 F. Supp. 42, 43-44 (D. S.C. 1992), *citing* Meachum v. Fano, 427 U.S. 215 (1976); *see also* Vice v. Harvey, 458 F. Supp. 1031, 1034 (D. S.C. 1978).  In fact, it is well settled that the placement of inmates into administrative segregation units or similar units is a valid of means of minimizing a "threat to security of the institution, threat to the safety of other residents or Jail staff, etc."  Jackson v. Bostick, 760 F. Supp. 524, 528 (D. Md. 1991);  *see* Hewitt v. Helms, 459 U.S. 460, 468 (1983)("The transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."); Anderson v. County of Kern, 45 F.3d 1310, 1312 (9th Cir. 1995)(prison officials have legitimate penological interest in administrative segregation, and they must be given "wide-ranging deference" with respect to their need to maintain order, discipline, and "institutional security"); *see also* Montanye v. Haymes, 427 U.S. 236, 242 (1976)(if a prisoner's confinement is within terms of the sentence imposed upon him and does not violate other constitutional provisions, "the Due

15

Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight"). In other words, since the Plaintiff was committed by a Court of General Sessions to the custody of the South Carolina Department of Corrections, the choices of where and how the Plaintiff is to be confined are to be determined by the South Carolina Department of Corrections. As a result, Plaintiff does not state a viable civil rights claim against any Defendant based on Plaintiff's current or past custody classifications and/or cell assignments. *See* Wolff v. McDonnell, 418 U.S. at 558-62; Mann v. Leeke, 73 F.R.D. 264, 265-267 & n. 6 (D. S.C. 1974); Ramey v. Hawk, 730 F. Supp. 1366, 1372 (E.D. N.C. 1989)(extended the holding in Breeden v. Jackson to the Federal Bureau of Prisons); *see also* Cooper v. Riddle, 540 F.2d 731, 732 (4th Cir. 1976)(*citing* Meachum v. Fano: federal courts are not "to assume the role of super wardens of state penal institutions").

**6. Access to courts**

Plaintiff's continuing complaints about the nature and extent of his access to the law libraries in the various institutions where he has been housed do not raise a cognizable civil rights claims against any Defendant because there are no allegations of any *specific* injury (other than mental distress) that the plaintiff has suffered or is likely to suffer as a result of the alleged inadequate access to legal materials. Plaintiff's broad, conclusory allegations to the effect that various named and unnamed persons, such as Defendants Parnell, Rhodes and Green, are conspiring to deny him access to the courts by establishing "planned problems to agitate, provoke and stop Plaintiff in getting legal materials from the law library and to not get his legal issues together properly and not at all on paper to present to courts" without additional allegations showing missed court filing dates and/or

16

dismissals, etc. proximately caused by limited access to legal research and writing materials do not establish any viable constitutional claim based on denial of access to court.  *See* Lewis v. Casey, 518 U.S. 343 (1996)(plaintiff must allege actual injury resulting from allegedly inadequate jail library in order to state a claim under § 1983); Magee v. Waters, 810 F.2d 451 (4th Cir.1987) (actual injury required of city jail inmate who received books after delay and was allowed one hour of library time a week).  Other circuits also have required a showing of injury or prejudice in cases involving minor or indirect restrictions on access to materials and assistance.  *See, e.g.*, Mann v. Smith, 796 F.2d 79 (5th Cir.1986) (no denial of access to county jail inmate with access to legal assistance but not library who nevertheless was able to file legally sufficient claim); Cookish v. Cunningham, 787 F.2d 1 (1st Cir.1986) (denial of access to law library, except for emergency matters, during two-week quarantine period does not state violation); Hudson v. Robinson, 678 F.2d 462 (3d Cir.1982) (actual injury must be shown; that library is noisy, open at inconvenient times, with no free supplies, and with notary not always available does not state claim); Twyman v. Crisp, 584 F.2d 352 (10th Cir.1978) (use of library restricted to two hours a week did not lead to any prejudice, so no denial of access); *cf.* Peterkin v. Jeffes, 855 F.2d 1021 (3d Cir.1988) (summary judgment not appropriate in systemic challenge of death row prisoners to denial of access to libraries and inmate law clinic workers).

## 7. **Mental anguish, harassment**

Plaintiff's assertions that Defendants Farrakah and Masonic Order have infiltrated the SCDC prison system and have created tensions among Black and White inmates that

17

have somehow negatively affected Plaintiff's peace of mind while incarcerated fail to state any type of civil rights action against these private actors.    Additionally, Plaintiff's allegations that he was "attacked," that his personal property was not promptly returned to him, and that his requests to have a substance tested by Defendants Rhodes and Green in connection with a 2005 disciplinary segregation action because there are no allegations that Plaintiff suffered any type of physical injury from these situations.  The Prison Litigation Reform Act (PLRA) of 1996 placed an important limitation upon all actions arising from prison conditions, requiring proof of "physical injury" arising from the allegedly unconstitutional condition.  Under 42 U.S.C. § 1997e(e) no recovery of monetary damages is allowed for emotional stress:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

Additionally, his claims of "harassment" by fellow inmates, SCDC employees and officials, and others do not state any type of viable civil rights claim.   It is well settled that "the use of vile and abusive language is never a basis for a civil rights action." Sluys v. Gribetz, 842 F. Supp. 764, 765 n. 1 (S.D. N.Y. 1994).  Hence, the use of racial slurs or other arguably demeaning language by fellow inmates, prison employees, or members of private charities or organizations such as the Masonic Order or the Nation of Islam against Plaintiff to harass or provoke him, even if true, is not actionable under 42 U.S.C. § 1983.  *See* Morrison v. Martin, 755 F. Supp. 683, 687 (E.D. N.C. 1990)("The subjection of a prisoner to verbal abuse or profanity does not arise to the level of a constitutional deprivation."); *see also* Batista v. Rodriguez, 702 F.2d 393, 398 (2d Cir. 1983); Malsh v. Austin, 901 F. Supp. 757 (S.D. N.Y. 1995)("Verbal assault, standing alone, is not a judicially cognizable

18

injury in a § 1983 civil rights action.").  To the extent that Plaintiff complains about a two-week delay in his receipt of his personal property from Defendants Green and Rhodes after he was released from administrative segregation, he fails to state any viable federal claim. Plaintiff has an adequate state court remedy under the South Carolina Torts Claim Act for such personal property issues.  *See* Hudson v. Palmer, 468 U.S. 517, 533 (1984).  The United States Court of Appeals for the Fourth Circuit has held that a federal district court should deny § 1983 relief if state law (the South Carolina Tort Claims Act, S.C, Code Ann § 15-78-10 *et seq.*) provides a Plaintiff with a viable remedy for the loss of personal property — even if the deprivation was caused by an employee of the state, an employee of a state agency, or an employee of a political subdivision of a state.  *See* Yates v. Jamison, 782 F.2d 1182, 1183-84 (4th Cir. 1986).  In any event, Plaintiff's own allegations show that his personal property, including legal materials and missing Walkman, were ultimately returned to Plaintiff,  there are no allegations of any continuing "injury" from these temporary deprivations, and, thus, any damage Plaintiff might have suffered from them could be described as " *de minimus*" at best.  *See* Mitchell v. Horn, 318 F.3d 523, 535 (3d Cir.  2003) (§ 1997e's "injury" provision requires more than *de minimus* injury); Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir. 1997)(same).

## 8.  FTCA

To the extent that Plaintiff claims that he is suing the United States, former President Clinton, and/or United States Magistrate Judge McCrorey under the Federal Torts Claim Act (FTCA),[9] the Complaint should be summarily dismissed because it is clear

---

[9] In his list of "counts" page, Plaintiff cites to "28 U.S.C.A. § 2401." Although this is a statute of
(continued...)

19

that Plaintiff has not exhausted his administrative remedies: a clear requirement before one may proceed with a Federal Torts Claim Act case.[10]   An administrative claim must first be filed with the appropriate federal agency before commencement of a civil action in a district court under the FTCA, *see* 28 C.F.R. § 14.2; and the "STANDARD FORM 95," however, there is no indication that Plaintiff has filed an administrative claim with the United States Department of Justice or with any other federal agency for that matter.  As a result, Plaintiff fails to state any viable FTCA claim against any Defendant.

### 9. <u>Frivolity and Maliciousness</u>

Finally, under the provisions of the Prison Litigation Reform Act, more specifically 28 U.S.C. § 1915(e)(2)(B), this Court should dismiss any action filed by a prisoner which is "frivolous or malicious" [;] which "fails to state a claim on which relief may be granted" [;] or which "seeks monetary relief against a defendant who is immune from such relief." Plaintiff's Complaint falls within the ambit of all three bases for dismissal under the PLRA. With respect to the remaining three named Defendants in this case who have not yet been mentioned: "C/O Sturkie, C/O Gathers [and] C/O Austin," careful review of the Complaint allegations discloses no allegations of wrongdoing against these three persons.  They are not referred to on any page of Plaintiff's Complaint except for the page on which the Defendants are named, and no factual allegations about anything they allegedly did or said

---

[9](...continued)

limitations statute and not the citation to the actual Act (28 U.S.C.A. § 1346), under the rule of liberal interpretation of *pro se* pleadings, this citation is being interpreted to show an intent on Plaintiff's part to assert a FTCA cause of action against some Defendants (only federal employees, officials, agencies can be sued under the FTCA).

[10]The FTCA waives the sovereign immunity of the United States in certain limited situations.  Litigants must strictly comply with the requirements of the FTCA.  *See* 28 U.S.C. § 2675; <u>United States v. Kubrick</u>, 444 U.S. 111, 117-118 (1979).

to Plaintiff are anywhere in the document.  There simply are no allegations of any wrongdoing on the part of Defendants Struckie, Gathers, or Austin Plaintiff's Complaint, and, as a result, the Compliant is both frivolous and fails to state a claim on which relief can be granted as to these "Defendants."  *See* Cochran v. Morris, 73 F.2d 1310 (4th Cir. 1996)(statute allowing dismissal of *in forma pauperis* claims encompasses complaints that are either legally or factually baseless); Weller v. Dep't of Social Servs., 901 F.2d 387, 389 (4th Cir. 1990)(dismissal proper where there were no allegations against defendants).  For the all reasons stated the remainder of this Report above, the Complaint is also frivolous and fails to state a claim for relief against all of the other named Defendants.

Moreover, to the extent that Plaintiff attempts to reassert the same claims about his criminal conviction and subsequent proceedings in connection with that conviction and claims that every state or federal judge who ever ruled against him is somehow involved in a "conspiracy" with others to violate his rights, the Complaint is also subject to summary dismissal for maliciousness.  Plaintiff has been specifically informed in at least two separate cases that such claims are barred.  *See* supra notes 4, 6 and 7.  He has also been warned in this case, *see* Entry 10,  and in another, *see* Civil Action No. 3:04-22840, that he must use his legal name, James Jordan, III, in his signature on any pleading submitted to this Court.  Nevertheless, despite the clear warnings, the present Complaint again contains the same Heck-barred claims and claims against immune parties and non-state actors.  Additionally, Plaintiff continues to submit "pleadings" to the Court in this case without the proper signature, and continues to allege wrongdoing by and evil motives against any and all judges of this Court and/or other courts who rule against him.  *See*

21

Entry 11 (Plaintiff's "motion" to appoint counsel, etc.).

In light of his previous experience in this Court and the decisions and directions in other rulings he has received since 2000, Plaintiff's continued, knowing submission of improperly signed pleadings and continued, knowing assertions of previously dismissed claims against immune Defendants indicates maliciousness. *See* In re McDonald, 489 U.S. 180(1989)(denying leave to proceed *in forma pauperis* based, in part, on abusive number of filings); Cochran v. Morris, 73 F.3d 1310, 1316-17 (4th Cir. 1996)("plaintiff's past litigious conduct should inform a district court's discretion under § 1915(d)[now 1915(e)]"); Turner v. United States Navy, 793 F.Supp. 679, 681) (E.D. Va. 1992)(dismissal due to abuse of court process by the filing of successive, frivolous complaints); *see also* Comeaux v. Cockrell, 72 Fed.Appx. 54 (5th Cir., July 15, 2003) (unpublished, text available on Westlaw, No. 02-20444) (maliciousness found where Plaintiff filed repetitive and improper pleadings despite prior warnings); DeTemple v. Paugh, 2002 WL 32290986 (N.D. W.Va., July 08, 2002) (unpublished, text available on Westlaw, No. CIV.A. 5:01CV126)(same). As a result, the Complaint should be summarily dismissed for all three reasons established under the applicable statute: frivolity, maliciousness, and failure to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

**Recommendation**

Accordingly, it is recommended that the District Court dismiss the Complaint in this case *without prejudice* and without issuance and service of process. *See* Denton v. Hernandez; Neitzke v. Williams; Haines v. Kerner; Brown v. Briscoe, 998 F.2d 201, 202-04

& n. * (4th Cir. 1993); <u>Boyce v. Alizaduh</u>; <u>Todd v. Baskerville</u>, 712 F.2d at 74; *see also* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

     Since Plaintiff seeks monetary damages in this case and many Defendants in this case are immune from suit and since a major portion of the Compliant is frivolous and malicious, 28 U.S.C. § 1915A(b)(2) is applicable in this case.  Additionally, several courts have held that a dismissal under <u>Heck</u> constitutes a "strike" under 28 U.S.C. § 1915(e)(2) and (g).  *See* <u>Luedtke v. Bertrand</u>, 32 F.Supp.2d 1074 (E.D. Wis.1999); <u>Sandles v. Randa</u>, 945 F. Supp. 169 (E.D. Wis. 1996); *see also* <u>Rivera v. Allin</u>, 144 F.3d 719, 731 (11th Cir. 1998); <u>Grant v. Sotelo</u>, 1998 WL 740826 (N.D. Tex.1998).  Hence, I also recommend that this case be deemed a "strike" for purposes of the "three strikes" rule of 28 U.S.C. § 1915(g).  Plaintiff's attention is directed to the important notice on the next page.

     Respectfully submitted,

     s/Thomas E. Rogers, III

     Thomas E. Rogers, III
     United States Magistrate Judge

August 18, 2006
Florence, South Carolina

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
## &
## The **Serious Consequences** of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of service. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-71 (1976); Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See* Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992); Oliverson v. West Valley City, 875 F. Supp. 1465, 1467 (D. Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. *See* Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991); *see also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard,, the court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"; which involved a *pro se* litigant); Goney v. Clark, 749 F.2d 5, 7 n. 1 (3d Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). **This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins; Small v. Secretary of HHS, 892 F.2d 15, 16 (2d Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
P. O. Box 2317
Florence, South Carolina 29503
